

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone 13<br>Seized as FP&F No. 2023565500026702<br>("Target Device 1") | )<br>)<br>)<br>)<br>)<br>)   Case No.   **23-MJ-02021-WVG** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | *Offense Description* |
|---|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling | |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Carly A. Herbert, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Carly A. Herbert, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____06/05/2023_____

*William V. Gallo*
*Judge's signature*

City and state: San Diego, California

HON. WILLIAM V. GALLO U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Carly A. Herbert, being duly sworn, hereby state as follows:

## INTRODUCTION

1.     I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Black Apple iPhone 13
> Seized as FP&F No.2023565500026702
> **("Target Device 1")**
>
> Black Apple iPhone 7
> Seized as FP&F No. 2023565500026702
> **("Target Device 2")**

the **"Target Devices"**, as further described in Attachments A-1 and A-2 and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrants related to the investigation and prosecution of Donald ANDRACA for transporting and moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter.   Dates and times are approximate.

## TRAINING AND EXPERIENCE

4.     I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.      My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and the utilization of illegally obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.      During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

2

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.      The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.    On June 3, 2023, Border Patrol Agent A. Overbay was performing his assigned duties in the Campo Border Patrol Station's area of responsibility. Agent Overbay was wearing a full rough duty uniform with all insignia and badge visible, and driving an unmarked Border Patrol vehicle equipped with fully functional emergency lights and sirens.

12.    At approximately 2:10 PM, agents were informed of a Be on the Lookout (BOLO) of a white Toyota Tacoma traveling through the Campo area. The Tacoma was previously observed loading possible illegal aliens in the Chula Vista area and successfully absconding from the Border Patrol.

13.    At approximately 2:20 PM, Agent Overbay was driving south on Buckman Springs Road when he observed a white Toyota Tacoma with a single male driver, later identified as the defendant, Donald ANDRACA, matching the description of the BOLO, driving north at a high rate of speed. Agent Overbay began to follow the Tacoma and confirmed that it was the same vehicle from the BOLO. The Tacoma then merged onto the Interstate 8 (I-8) eastbound. Agent Overbay then observed another individual pop up from the back seat of the Tacoma.

14.    The Tacoma then swerved from one lane into another, as it passed other vehicles. Once Agent Overbay was able to catch up to the Tacoma, he activated his emergency lights and siren in attempt to conduct a vehicle stop. The Tacoma did not stop and continued driving east on I-8 at approximately 80 MPH. The Tacoma then stop on the shoulder, a single male jumped out, and the Tacoma took off. This area is located approximately ten miles north of the United States/Mexico International Boundary and approximately ten miles east of the Tecate, California, Port of Entry.

15.    Agent Overbay stopped and detained the individual, later identified as the material witness, Norberto JOSE Angon. Agent Overbay then conducted an immigration

5

1  inspection. JOSE stated that he is a citizen of Mexico illegally present in the United States.

2  At approximately 2:25 PM, Agent Overbay placed JOSE under arrest.

16.     Border Patrols Escalon and J. Griffith continued to pursue the Tacoma as it

3  exited the Kitchen Creek exit. The Tacoma head north on Kitchen Creek Road when it

4  abruptly stopped and the driver, later identified as the defendant, Donald ANDRACA,

5  absconded towards the mountainous area. Agent Overbay responded to the location to

assist in finding ANDRACA. Agent Overbay discovered shoe prints from the Tacoma's

6  driver side and began to follow it. Agent Overbay followed the shoe prints for

7  approximately two miles until encountering ANDRACA attempting to conceal himself in

8  a small outcrop. This area is located approximately fifteen miles north of the United

States/Mexico International Boundary and approximately eleven miles east of the Tecate,

9  California, Port of Entry. At approximately 7:24 PM, Agent Overbay placed ANDRACA

10  under arrest.

17.     At the time of arrest, a black apple iPhone 13 **(Target Device 1)** was found

11  on ANDRACA's person, and he claimed the phone as his. During a post arrest search, a

12  black apple iPhone 7 **(Target Device 2),** belonging to ANDRACA**,** was found inside

13  JOSE's backpack. ANDRACA stated that he gave the phone to JOSE. ANDRACA claimed

14  the phone was his. These devices were subsequently seized.

18.     The defendant ANDRACA was read his Miranda Rights and was willing to

15  speak without an attorney present. ANDRACA stated that he was contacted on his phone

16  by an individual.  ANDRACA stated that this individual got his phone number from his

17  cousin, since he had told him that his construction work was slow and he needed money.

ANDRACA stated that he did not know how much he was going to get paid, but was told

18  that it was going to be worth it.  ANDRACA stated that individual sent him a GPS pin of

19  where to pick up an individual. ANDRACA stated that the individual he picked up was

20  standing on the side of the road near State Route 94, just west of Potrero, California.

ANDRACA stated that he agreed to take the individual to Palomar Mountain. ANDRACA

21

6

stated that when he was pulled over by Border Patrol agents, he panicked and took off. ANDRACA stated that he did not know where he was going and that he was running away because he was scared.

19.     Material witness JOSE stated that he made arrangements to be smuggled into the United States and was going to pay a discounted price of $4,000 USD, if he worked in San Bernardino, CA until he paid off his debt. JOSE stated that he was told that a white Tacoma was going to pick him up. JOSE stated that when the Tacoma arrived, he got into the front passenger seat, but was told by the driver to move to the rear seat and hide. JOSE stated that he began to hear police sirens and suddenly the driver stopped and told him to get out. JOSE stated he was then arrested by Border Patrol agents as the driver continued driving in an attempt to get away.

20.     Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the defendant, ANDRACA was using the **Target Devices** to communicate with others to further illegal entry into the United States.  Based on my training and experience, it is also not unusual for individuals, such as the defendant, ANDRACA, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **May 3, 2023, through June 3, 2023**.

## METHODOLOGY

21.     It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the devices are

subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.

22.     Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting

8

1 the identification and extraction of data will complete the analysis within ninety (90) days

2 from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

3

     25.    Law enforcement has not previously attempted to obtain the evidence sought

4 by this warrant.

5 //

6 //

7 //

8 //

9 //

10 //

11 //

12 //

13 //

14 //

15 //

16 //

17 //

18 //

19 //

20 //

21

## CONCLUSION

26.    Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Section 1324.

27.    Because the **Target Devices** were seized at the time of ANDRACA's arrest; and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **May 3, 2023, through June 3, 2023**.

28.    Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1, A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Carly A. Herbert
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 5th day of June 2023.

William V. Gallo

Hon. WILLIAM V. GALLO
United States Magistrate Judge

10

1

## ATTACHMENT A-1

2

PROPERTY TO BE SEARCHED

3     The following property is to be searched:

4     Black Apple iPhone 13
      Seized as FP&F No. 2023565500026702
5     (**"Target Device 1"**)

6

7     Target Device is currently in the custody of the Department of Homeland Security,
      Customs and Border Protection, United States Border Patrol, San Diego Sector.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below.  The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **May 3, 2023, through June 3, 2023**:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.